UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MONIQUE RAQUEDAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CENTERPLATE OF DELAWARE INC,<br><br>Defendant. | Case No. 17-CV-03828-LHK<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 40 |

Plaintiffs Monique Raquedan and Ronald Martinez ("Plaintiffs") bring the instant putative class action against Defendant Centerplate of Delaware, Inc. ("Defendant") for various violations of the California Labor Code. Before the Court is Defendant's motion to dismiss Plaintiffs' second amended complaint. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Defendant's motion to dismiss.

## I.   BACKGROUND

### A.  Prior Class Action Settlement in *Thompson*

Because Defendant's motion to dismiss depends in large part on the preclusive effect of a prior class action settlement on the instant action, the Court first provides the relevant details of that prior class settlement. In February 2016, Gabriel Thompson brought a putative class action

against Defendant and five of Defendant's corporate officers ("*Thompson*") in Santa Clara County Superior Court. *See* Thompson ECF No. 1-6.[1] The complaint in *Thompson* alleged that Mr. Thompson "was an employee of [Defendant] who worked during the course of the 49ers['] 2015–2016 season and Super Bowl 50 at Levi's Stadium," and that Mr. Thompson "ha[d] performed work for [Defendant] without receiving any compensation throughout the 49er's 2015–2016 season but particularly during Super Bowl 50." *Id.* ¶¶ 7, 10. The *Thompson* complaint further alleged that Mr. Thompson "worked hours beyond eight (8) in a single work day that have not been compensated at the appropriate overtime rate," *id.* ¶ 13, and relatedly, that Defendant "fail[ed] to pay for . . . travel time and associated waiting time" and "for all hours [Mr. Thompson] was on the clock." *Id.* ¶ 42. Finally, the complaint asserted that while Mr. Thompson was employed by Defendant during the 2015–2016 NFL season, Defendant "neither authorized nor permitted [Mr. Thompson] to take rest breaks" because although Defendant had established "a meal period policy [that gave] relief for meal periods," Defendant had "failed to establish a rest break policy and [had] failed to establish any staffing plan which would allow employees to be relieved from their serving duties." *Id.* ¶¶ 58–59. Based on this alleged misconduct by Defendant, Mr. Thompson brought the following five class claims: (1) "failure to pay for each hour worked at the appropriate rate" in violation of various provisions of the California Labor Code, *id.* at 8; (2) "failure to authorize and permit rest breaks" in violation of California Labor Code § 226.7, *id.* at 10; (3) "failure to provide accurate itemized wage statements" in violation of California Labor Code § 226, *id.* at 11; (4) "failure to provide all wages due at separation" in violation of California Labor Code §§ 201–03, *id.* at 12; and (5) unfair competition in violation of the UCL. *Id.* at 14. Mr. Thompson sought to assert these class claims on behalf of a class composed of "[a]ll employees and former employees of Defendant who worked at Levi's Stadium during the 2015– 2016 season." *Id.* at 5; *see also id.* at 6 (stating in support of numerosity that "[w]hile the precise number of class members has not been determined at this time, [Mr. Thompson] is informed and

---

[1] "Thompson ECF No." denotes docket entries in Case No. 16-CV-1486-EJD, *Thompson v. Centerplate of Delaware, Inc. et al.*

2
Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

believes that Defendant employed approximately 3000 people during the course of the 2015–2016 NFL season").

In March 2016, Defendant removed the *Thompson* action to this district. *See* Thompson ECF No. 1. After both Defendant and Mr. Thompson declined magistrate judge jurisdiction on April 11, 2016, *see* Thompson ECF Nos. 8–9, *Thompson* was reassigned to United States District Judge Edward J. Davila on April 12, 2016. Thompson ECF No. 11.

On May 13, 2016, the *Thompson* parties filed a notice of settlement stating that "the Parties have reached a settlement in the above-captioned matter." Thompson ECF No. 13. Then, on September 1, 2016, the *Thompson* parties filed a joint motion for preliminary approval of class settlement. Thompson ECF No. 20. In their joint motion for preliminary approval, the *Thompson* parties represented to Judge Davila that their settlement involved a settlement class composed of "all of Defendant's non-exempt workers that worked at the 2016 Super Bowl in Santa Clara, California," and that the settlement would pay each of those workers "5 hours of overtime pay." *Id.* at 1; *see also id.* at 3 ("The Settlement covers approximately 927 current and former non-exempt employees who worked during the 2016 Super Bowl.").

The *Thompson* parties also submitted their settlement agreement as an attachment to their joint preliminary approval motion. Thompson ECF No. 20-2. This settlement agreement contained, among other things, a "Release of Claims" provision. *See id.* at 3–4. This release stated, in relevant part, that all *Thompson* settlement class members would release "all claims, demands, rights, liabilities and causes of action that were or could have been asserted . . . based on any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions, or failures to act pled or arising out of or reasonably related to the transactions and occurrences pled in the [*Thompson*] Complaint." *Id.*

On November 9, 2016, Judge Davila granted preliminary approval of the *Thompson* class action settlement. Thompson ECF No. 23. Thereafter, notice of the settlement was sent to all of Defendant's employees who worked at Levi's Stadium during the 2016 Super Bowl. *See* Thompson ECF No. 20-5 (*Thompson* notice, stating that "[t]his law suit involves a Class defined

3

Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

as 'all of [Defendant's] non-exempt workers in California that worked at the 2016 Super Bowl in Santa Clara, California'" and that "[y]ou are receiving this Notice because you are one of the Class Members").

On February 17, 2017, the *Thompson* parties filed a joint motion for final approval of the class settlement. Thompson ECF No. 23. Like in their joint motion for preliminary approval, the *Thompson* parties represented to Judge Davila in their joint motion for final approval that their settlement involved a settlement class composed of "all of Defendant's non-exempt workers that worked at the 2016 Super Bowl in Santa Clara, California," and that the settlement would pay each of those workers "5 hours of overtime pay." *Id.* at 1.

On March 30, 2017, Judge Davila granted final approval of the *Thompson* class action settlement. Thompson ECF No. 25. In his final approval order, Judge Davila noted that "[Mr. Thompson] brought several wage-and-hour claims on behalf of food-service employees who worked during the 2016 Super Bowl," and that as a result of the *Thompson* settlement, each of these employees would receive "payment for five hours of work . . . at that employee's hourly overtime rate." *Id.* 1–2.

**B. The Instant Action**

The instant putative class action was originally filed by Rodrigo Raquedan on May 24, 2017 in Santa Clara County Superior Court. ECF No. 1-3. Defendant removed the action to this Court on July 5, 2017. ECF No. 1. Then, on November 15, 2017, Mr. Raquedan filed a motion for leave to substitute in new class representatives—Plaintiffs—on the grounds that Mr. Raquedan had a criminal conviction that might raise concerns about his adequacy to represent the class. *See* ECF No. 27. Mr. Raquedan attached to his motion a proposed first amended complaint that replaced Mr. Raquedan with Plaintiffs as the named plaintiffs. *See* ECF No. 27-2. On January 23, 2018, the Court granted Mr. Raquedan's motion for leave to substitute in new class representatives and ordered that the proposed first amended complaint attached to Mr. Raquedan's motion be filed by January 24, 2018. ECF No. 31.

On January 24, 2018, Plaintiffs filed the first amended complaint. ECF No. 32. Then, on

4
Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

February 7, 2018, the parties filed a stipulation to allow Plaintiffs to file a second amended complaint in order to "expressly plead[] that they are not asserting any claims that were released or are barred" by the *Thompson* settlement. ECF No. 38. In the stipulation, the parties also stated that they had "a disagreement about the scope of the [*Thompson*] release," but that "Plaintiffs acknowledge[d] that there is a release which affects the claims in this case. *Id.* Thereafter, on February 9, 2018, Plaintiffs filed a second amended complaint ("SAC"). ECF No. 39 ("SAC").

In the SAC, Plaintiffs Raquedan and Martinez allege that they were "hired by Defendant[]" "on or about August 2014" and "July 24, 2014," respectively, as "hourly, non-exempt employee[s]" to work "at an entertainment venue in California." SAC ¶¶ 20–21. Plaintiffs further allege various instances and patterns of misconduct by Defendant regarding Defendant's employment practices. In very general terms, Plaintiffs assert that Defendant failed to (1) provide Plaintiffs with meal and rest periods; (2) pay premium wages for those missed meal and rest periods; (3) pay Plaintiffs for all hours worked; (4) reimburse Plaintiffs for business expenses; (5) pay Plaintiffs their accrued vacation; (6) provide Plaintiffs with sick days; and (7) pay Plaintiffs all of their final wages following separation of employment. *Id.* ¶ 1. Based on these and other more detailed factual allegations, Plaintiffs' SAC asserts nine causes of action against Defendant, including: (1) failure to provide meal periods in violation of California Labor Code §§ 204, 223, 226.7, 512, and 1198, *id.* at 10–12; (2) failure to provide rest periods in violation of California Labor Code §§ 204, 223, 226.7, and 1198, *id.* at 12–14; (3) failure to pay hourly wages in violation of California Labor Code §§ 223, 510, 1194, 1197, and 1198, *id.* at 14–17; (4) failure to indemnify/forced purchases in violation of California Labor Code §§ 2802 and 450, *id.* at 17–18; (5) failure to pay vacation wages in violation of California Labor Code § 227.3, *id.* at 18–20; (6) failure to provide paid sick days in violation of California Labor Code §§ 245 *et seq.*, *id.* at 20–21; (7) failure to provide accurate written wage statements in violation of California Labor Code § 226(a), *id.* at 21–23; (8) failure to timely pay all final wages in violation of California Labor Code §§ 201–203, *id.* at 23–25; and (9) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq. Id.* at 25–27. However, Plaintiffs' SAC also explicitly

excludes "[a]ll claims that were released or are barred pursuant to" the *Thompson* settlement. *Id.* ¶ 12.

Plaintiffs seek to assert the causes of action in the SAC on behalf of two proposed classes and seven proposed sub-classes. *Id.* ¶ 11. The two proposed classes are (1) the "Centerplate Class," which is comprised of "[a]ll persons employed by Defendant[] and/or any staffing agencies and/or any other third parties who worked at any Venue"—that is, "any location where Defendant[] serve[s] as hospitality partner"—"in hourly or non-exempt positions in California" from July 5, 2013 until judgment is entered; and (2) the "UCL Class," which is comprised of "[a]ll Centerplate Class members employed by Defendant[] in California" from July 5, 2013 until judgment is entered. *Id.* ¶¶ 9–11. The seven proposed sub-classes are subdivisions of the Centerplate Class. *Id.* ¶ 11. While five of the seven proposed sub-classes have the same class period as the Centerplate Class—July 5, 2013 to the date of judgment—the other two proposed sub-classes have a slightly shorter class period—July 5, 2014 to the date of judgment. *See id.*

On February 23, 2018, Defendant filed the instant motion to dismiss Plaintiffs' SAC. *See* ECF No. 40 ("Mot."). Plaintiffs filed an opposition on March 9, 2018, *see* ECF No. 43 ("Opp."), and Defendant filed a reply on March 16, 2018. *See* ECF No. 48 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

6

Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

**B. Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III. DISCUSSION**

In its motion to dismiss, Defendant argues that Plaintiffs' SAC should be dismissed based on the following grounds: (1) Plaintiffs' claims "are barred by the doctrine of res judicata" based on the *Thompson* settlement, Mot. at 7–8; (2) Plaintiffs' claims "are barred by the release in *Thompson*," *id.* at 9–10; and (3) because Plaintiffs' claims are barred, "Plaintiffs' claims are moot and this Court lacks subject matter jurisdiction." *Id.* at 10–11. However, Defendant's second argument is duplicative of Defendant's first argument. As the leading treatise on class actions explains, because "[t]he process by which a class action settlement is approved has the effect of

7

turning the private settlement into a . . . judgment," the preclusive effect of a class action settlement "is always governed by the doctrine of preclusion and never by the settlement contract [and by extension, the release contained in the settlement contract] directly." William B. Rubenstein, 6 Newberg on Class Actions § 18:19 (5th ed.). In effect, this principle makes very little (if any) practical difference because "[t]he doctrine of claim preclusion in class actions" must still "take account of . . . settlement [contracts] approved as judgments." *Id.* But for purposes of analyzing the instant case, the principle that the preclusive effect of a class action settlement "is always governed by the doctrine of preclusion" renders Plaintiff's second argument—which is based exclusively on the settlement agreement in *Thompson*—superfluous. *Id.*

Accordingly, of Defendant's first two arguments, the Court will address only the first argument, which is Defendant's res judicata argument. Then, the Court will discuss Defendant's third argument.

### A. Claim Preclusion

Res judicata, or claim preclusion, applies when three requirements are satisfied: (1) the prior proceeding resulted in a final judgment on the merits; (2) the present action involves substantively the same claims or causes of action as the prior proceeding; and (3) the party to be precluded was a party or in privity with a party to the prior proceeding. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005); *Boeken v. Philip Morris USA Inc.*, 48 Cal. 4th 788, 797 (2010). It is clear—and Plaintiffs do not dispute—that the prior proceeding on which Defendant's claim preclusion argument is based (*Thompson*) resulted in a final judgment on the merits in the form of a class action settlement that was approved by Judge Davila. Thompson ECF No. 25. Thus, the Court need only address the other two claim preclusion requirements. The Court first discusses whether Plaintiffs were parties to the *Thompson* settlement, and then discusses whether Plaintiffs' causes of action are substantively the same as those in *Thompson*.

#### 1. Same Parties

Because Plaintiffs were not the class representatives in *Thompson*, Plaintiffs can be considered parties to the *Thompson* proceeding only if Plaintiffs were members of the *Thompson*

settlement class. The parties appear to dispute what the settlement class in *Thompson* was. Defendant asserts that the settlement class in *Thompson* was comprised of "all [of Defendant's] employees who worked at Levi's Stadium for the period of February 16, 2012 through April 22, 2016." Mot. at 2. To support this assertion, Defendant points to a provision of the *Thompson* settlement agreement defining "Class Members" to include "any employee [of Defendant] that has a claim raised in the [*Thompson*] Complaint who worked during" February 16, 2012 through April 22, 2016. *Id.* (citing Thompson ECF No. 20-2 at 1). In contrast, Plaintiffs appear to argue that the *Thompson* settlement class was comprised only of the employees of Defendant who worked at Levi's Stadium during the 2016 Super Bowl. *See* Opp. at 1 ("Defendant Centerplate is trying to use a settlement which resolved a day's disputed wage and hour claims related to travel time for employees who worked at the 2016 Super Bowl to absolve itself for years of liability for unpaid wages.").

The Court agrees with Plaintiffs. Although one portion of the *Thompson* settlement agreement appears to support Defendant's position, other portions support Plaintiffs' view. For example, the *Thompson* settlement agreement contains a provision defining the "Settlement Sum" as "the amount to be paid by Defendant, calculated by multiplying 5 hours of pay . . . for each employee of Defendant *that worked at the 2016 Super Bowl*." Thompson ECF No. 20-2 at 2 (emphasis added). Further, in jointly moving for both preliminary and final approval of the class settlement in *Thompson*, Defendant (along with the named plaintiff in *Thompson*) affirmatively represented to Judge Davila that the settlement class in *Thompson* was to be comprised of "all of Defendant's non-exempt workers in California that worked at the 2016 Super Bowl in Santa Clara, California." Thompson ECF No. 20 at 1; *accord* Thompson ECF No. 23 at 1; *see also* Thompson ECF No. 20 at 3 ("The Settlement covers approximately 927 current and former non-exempt employees [of Defendant] who worked during the 2016 Super Bowl."). In turn, Judge Davila stated in his order granting final approval of the *Thompson* settlement that "[Mr. Thompson] brought several wage-and-hour claims on behalf of food-service employees *who worked during the 2016 Super Bowl*," and that each of these specific employees—and only those employees—

9

would receive "payment for five hours of work . . . at that employee's hourly overtime rate" under the *Thompson* settlement. Thompson ECF No. 25 at 1–2 (emphasis added). Finally, and most importantly, the *Thompson* notice was sent only to those employees of Defendant who worked at the 2016 Super Bowl. *See* Thompson ECF No. 20-5 (*Thompson* notice, stating that "[t]his law suit involves a Class defined as 'all of [Defendant's] non-exempt workers in California that worked at the 2016 Super Bowl in Santa Clara, California'" and that "[y]ou are receiving this Notice because you are one of the Class Members"). Thus, even if the *Thompson* settlement agreement defined the settlement class more broadly than just those employees of Defendant who worked at the 2016 Super Bowl, *Thompson* can only preclude claims asserted by the employees who worked at the 2016 Super Bowl because no other employees were sent notice of the settlement and given an opportunity to opt out or object. *See Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992) (stating that a "prior decision" can have "no preclusive effect" on a plaintiff in a later proceeding "if there was a denial of due process"); *Hanna v. Sanofi-Aventis U.S., LLC*, 2013 WL 1855748, *3 (W.D. Wash. Apr. 29, 2013) ("[F]or a class judgment to bind an absent class member, due process requires that the absent class members receive adequate notice." (citing *Richards v. Jefferson Cty.*, 517 U.S. 793, 799–802 (1996))).

As a result, Plaintiffs' causes of action in the instant action can be barred by res judicata based on the *Thompson* settlement only if Plaintiffs worked at the 2016 Super Bowl as employees of Defendant. In support of its assertion that Plaintiffs "were members of the *Thompson* class," Mot. at 2, Defendant attached to its motion to dismiss a declaration from Tarus Dancy, an employee of the entity that was appointed as settlement administrator in *Thompson*—CPT Group, Inc. ("CPT"). ECF No. 40-5. In his declaration, Mr. Dancy states that CPT's "records show that Plaintiffs Monique Raquedan and Ronald Martinez . . . both received" notice of the *Thompson* settlement and payments "as part of the settlement." *Id.* ¶ 3. For their part, Plaintiffs do not dispute that they received notice of and payment from the *Thompson* settlement, nor do they contend that they did not work at the 2016 Super Bowl as employees of Defendant. Thus, Defendant has satisfied the "same party" component of its res judicata argument that Plaintiffs'

10
Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

claims should be dismissed as barred by the *Thompson* settlement.

### 2. Same Causes of Action

As discussed above, a prior proceeding can preclude causes of action brought in a later proceeding only if the causes of action in the later proceeding are substantively the same as those asserted in the prior proceeding. When the prior proceeding that is alleged to have preclusive effect is a class action settlement, this "same cause of action" inquiry looks first to the release contained in the prior proceeding's settlement agreement. Specifically, the preclusive effect of the prior class action settlement extends to all causes of action that were released by the prior proceeding's settlement agreement *so long as* those causes of action are "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotation marks omitted); *see* 6 Newberg on Class Actions § 18:19 (5th ed.) ("For [class action] settlement judgments, courts . . . giv[e] preclusive effect to releases contained in settlements so long as the released conduct arises out of the 'identical factual predicate' as the claims at issue in the case." (citation omitted)). Thus, a release in a prior proceeding's class action settlement agreement is invalid to the extent that it reaches beyond the "factual predicate" of the class claims asserted in the prior proceeding. *See Mata v. Manpower Inc.*, 2016 WL 948997, *7 (N.D. Cal. Mar. 14, 2016) ("Moreover, even if Manpower Inc. intended for the release to have a broader preclusive effect, such a release would have been invalid under Ninth Circuit law." (citing *Hesse*, 598 F.3d at 590)).

The *Thompson* settlement agreement released "all claims, demands, rights, liabilities and causes of action that were or could have been asserted . . . based on any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions, or failures to act pled or arising out of or reasonably related to the transactions and occurrences pled in the [*Thompson*] Complaint." Thompson ECF No. 20-2 at 3–4. Thus, on its face, the *Thompson* release appears to reach, but not exceed, the full preclusive scope allowed by the "identical factual predicate" rule. *Hesse*, 598 F.3d at 590.

Based on this reading of the *Thompson* release, it is clear that, contrary to Defendant's

11
Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

view, Plaintiff's causes of actions are not substantively the same as those asserted in *Thompson*. First, at least some of Plaintiffs' causes of action arise out of an entirely different factual predicate than the one underlying the claims in *Thompson*. In *Thompson*, the primary factual allegations in the complaint were that (1) the named plaintiff, Mr. Gabriel Thompson, "was an employee of [Defendant] who worked during the course of the 49ers['] 2015–2016 season and Super Bowl 50 at Levi's Stadium," Thompson ECF No. 1-6 ¶ 7; (2) Mr. Thompson "worked hours beyond eight (8) in a single work day that have not been compensated at the appropriate overtime rate," *id.* ¶ 13; (3) Defendant "fail[ed] to pay for . . . travel time and associated waiting time" and "for all hours [Mr. Thompson] was on the clock," which led Mr. Thompson to be under-compensated, or not compensated at all, for some of the hours that he worked for Defendant, *id.* ¶ 42; and (4) although Defendant had established "a meal period policy [that gave] relief for meal periods," Defendant had "failed to establish a rest break policy and [had] failed to establish any staffing plan which would allow employees to be relieved from their serving duties," and as a result Mr. Thompson was "neither authorized nor permitted to take rest breaks." *Id.* ¶¶ 58–59. Based on this alleged misconduct by Defendant, Mr. Thompson brought the following five class claims: (1) "failure to pay for each hour worked at the appropriate rate" in violation of various provisions of the California Labor Code, *id.* at 8; (2) "failure to authorize and permit rest breaks" in violation of California Labor Code § 226.7, *id.* at 10; (3) "failure to provide accurate itemized wage statements" in violation of California Labor Code § 226, *id.* at 11; (4) "failure to provide all wages due at separation" in violation of California Labor Code §§ 201–03, *id.* at 12; and (5) unfair competition in violation of the UCL. *Id.* at 14.

In contrast, at least four of Plaintiffs' claims in the instant case are based on completely different alleged misconduct on the part of Defendant. For example, Plaintiffs' first cause of action asserts that Defendant violated various provisions of the California Labor Code by (1) "maintain[ing] a policy or practice of not providing Plaintiffs . . . with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hour work period"; (2) failing to provide "second meal periods" to employees who worked "shifts of ten (10) or more hours"; and (3) failing to pay

12

Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

premium wages to employees who did not receive legally required meal periods. SAC ¶¶ 54–57. Further, Plaintiffs' fourth cause of action asserts that Defendant violated California Labor Code §§ 2802(a) and 450(a) because Defendant "required Plaintiffs . . . to purchase and maintain uniforms and apparel unique to Defendant[] at [Plaintiffs'] expense" and "failed to indemnify Plaintiffs . . . for such expenditures." SAC ¶ 102. Additionally, Plaintiffs' fifth cause of action asserts that Defendant violated California Labor Code § 227.3 by maintaining "a floating holiday policy . . . under which employees['] floating holiday pay not taken by the end of the calendar year and/or at termination of employment is subject to unlawful forfeiture." *Id.* ¶ 113. Beyond that, Plaintiffs' sixth cause of action asserts that Defendant violated California Labor Code § 245 because Defendant has "maintained a policy and practice of not paying" Defendant's employees "paid sick days . . . during their employment when they were out due to covered reasons." *Id.* ¶ 120. None of these purported instances or patterns of misconduct by Defendant were alleged, or even suggested, anywhere in the *Thompson* complaint. Thus, at the very least, Plaintiffs' first, fourth, fifth, and sixth causes of action are "based on" entirely *different* "factual predicate[s] as that underlying the claims in" *Thompson*. *Hesse*, 598 F.3d at 590.

Second, although some of Plaintiffs' causes of action *are* based on the same type of misconduct as that alleged in the *Thompson* complaint, none of those causes of action are *entirely* encompassed by the *Thompson* release because of the difference in time periods. The allegations of misconduct in the *Thompson* complaint focused exclusively on misconduct that purportedly occurred during the 2015–2016 NFL season. Specifically, as discussed above, the *Thompson* complaint alleged that Mr. Thompson "was an employee of [Defendant] who worked *during the course of the 49ers['] 2015–2016 season* and Super Bowl at Levi's Stadium" and that Mr. Thompson "ha[d] performed work for [Defendant] without receiving any compensation *throughout the 49er's 2015–2016 season* but particularly during Super Bowl 50." Thompson ECF No. 1-6 ¶¶ 7, 10 (emphases added). Additionally, the *Thompson* complaint sought to assert class claims on behalf of a class composed of "[a]ll employees and former employees of Defendant who worked at Levi's Stadium *during the 2015–2016 season*." *Id.* at 5 (emphasis added); *see also id.*

13
Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

at 6 (stating in support of numerosity that "[w]hile the precise number of class members has not been determined at this time, [Mr. Thompson] is informed and believes that Defendant employed approximately 3000 people during the course of the 2015–2016 NFL season"). As a result, the *Thompson* release only encompasses claims based on misconduct by Defendant that occurred during the 2015–2016 NFL season, including the 2016 Super Bowl.

In contrast, the SAC in the instant case defines a broader class period for all of Plaintiffs' causes of action. *See* SAC ¶ 11 (defining the class period for all of Plaintiffs' causes of action as either "the time period beginning four years prior to the filing of this action"—July 5, 2013— "until judgment is entered" or "the time period beginning three years prior to the filing of this action"—July 5, 2014—"until judgment is entered"). Thus, by operation of the "*identical* factual predicate" rule, *Hesse*, 598 F.3d at 590 (emphasis added), Plaintiffs' causes of action cannot be precluded by the *Thompson* settlement to the extent that they are based on misconduct that occurred either before or after the 2015–2016 NFL season.

For the foregoing reasons, Defendant has failed to establish that Plaintiffs' causes of action in the instant case are substantively the same as those asserted in *Thompson*.

### 3. Conclusion

Because none of Plaintiffs' causes of action are entirely substantively the same as the claims asserted in *Thompson*, Defendant cannot prevail on its argument that Plaintiffs' causes of action "are barred by the doctrine of res judicata" based on the *Thompson* settlement. Mot. at 7–8. The Court need not define the precise scope of *Thompson*'s preclusive effect on the instant class action at this stage of the case. For purposes of addressing Defendant's motion to dismiss, it is sufficient for the Court to note, as it did above, that the *Thompson* settlement can only preclude claims that (1) are asserted by those who worked for Defendant at Levi's Stadium during the 2016 Super Bowl; and (2) arise out of the "identical factual predicate as that underlying the claims in" *Thompson*. *Hesse*, 598 F.3d at 590.

### B. Lack of Subject Matter Jurisdiction

Defendant's third argument is that because "Plaintiffs' claims are barred by the

14
Case No. 17-CV-03828-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

1 [*Thompson*] judgment and the release, this Court lacks subject matter jurisdiction." Mot. at 10. Put another way, Defendant argues that because "all of the claims the Plaintiffs could bring against [Defendant] are covered and barred by the *Thompson* Judgment and Release, there is no live case or controversy and Plaintiffs have no standing to bring the claims alleged in the SAC." *Id.* Thus, Defendant's jurisdictional argument is premised on the notion that all of Plaintiffs' claims are "covered and barred by the *Thompson* Judgment and Release." *Id.* However, as the Court explained in detail above, Plaintiffs' causes of action in the instant case are *not* barred by claim preclusion based on the settlement in *Thompson*. As a result, Defendant's jurisdictional argument necessarily fails.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: July 10, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge