(*Counsel of record on next page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODRIGO RAQUEDAN *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CENTERPLATE OF DELAWARE, INC., *et al.*, <br><br> Defendants. | No. 5:17-cv-03828-LHK <br><br> **CLASS ACTION** <br><br> **NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF CLASS, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING; MEMORANDUM IN SUPPORT OF MOTION** <br><br> Date: November 21, 2019 <br> Time: 1:30 p.m. <br> Courtroom: 8 <br> 280 South First Street, 4th Floor <br> San Jose, CA 95113 <br> Judge: Hon. Lucy H. Koh |

LEGAL_US_W # 100612458.4

SHAUN SETAREH (Cal. State Bar No. 204514)
THOMAS SEGAL (Cal. State Bar No. 222791)
FARRAH GRANT (Cal. State Bar No. 293898)
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, California  90212
Telephone:  (310) 888-7771
Facsimile:  (310) 888-0109
shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com

Attorneys for Plaintiffs Rodrigo Raquedan,
Monique Raquedan and Ronald Martinez

JEFFREY D. WOHL (Cal. State Bar No. 096838)
ZINA DELDAR (Cal. State Bar No. 282637)
JANA B. FITZGERALD (Cal. State Bar No. 314085)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California  94111
Telephone:     (415) 856-7000
Facsimile:     (415) 856-7100
jeffwohl@paulhastings.com
zinadeldar@paulhastings.com
janafitzgerald@paulhastings.com

Attorneys for Defendant
Centerplate of Delaware, Inc.

# TABLE OF CONTENTS

*Page*

Table of Authorities ...................................................................................................................... ii

NOTICE OF JOINT MOTION AND JOINT MOTION ................................................................1

MEMORANDUM IN SUPPORT OF JOINT MOTION .................................................................1

I.      INTRODUCTION/SUMMARY OF ARGUMENT ...............................................................1

II.     BACKGROUND .................................................................................................................2

III.    THE SETTLEMENT ...........................................................................................................5

        A.      The Settlement Class. ...............................................................................................5

        B.      Notice Process. ..........................................................................................................5

        C.      Maximum Settlement Amount and Distributions. .....................................................7

        D.      Scope of the Class Member Releases. .......................................................................8

IV.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ..............................9

        A.      The Best Practical Notice of Settlement Has Been Provided to the Class. ...............9

        B.      The CAFA Notice Requirements Have Been Satisfied. ............................................9

        C.      Final Approval Standards under Rule 23. ...............................................................10

        D.      The Settlement Is Presumptively Fair Because of the Positive Response to the
                Settlement by Class Members, the Significant Investigation Conducted, Class
                Counsel's Experience, and Arm's-Length Negotiations. .......................................11

                1.      Class Members' Response to the Settlement Is Positive. ..............................11

                2.      The Settlement Was Reached Only After the Parties Engaged in
                        Substantial Investigation and Analysis of the Legal Issues. ........................12

                3.      Counsel's Endorsement of the Settlement Is Entitled to Great Weight. .......12

                4.      The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-
                        Length Negotiations. .....................................................................................12

                5.      The Settlement Provides Substantial, Certain Benefits and Avoids the
                        Risk, Cost, Delay, and Burden of Further Litigation. ...................................13

                        a.      The Value of the Settlement Favors Final Approval. ...............13

                        b.      Further Litigation Would Involve Risk, Expense, Delay, and
                                Burden on Class Members. ......................................................14

V.      CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................................11, 12

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ...........................................................................................11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)....................................................13

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................................................2, 10

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) .............................................11, 12

*Gabriel Thompson v. Centerplate of Delaware, Inc.*,
U.S.D.C., N.D. Cal., No. 5:16-cv-01486-EJD ..................................................................................8

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)...................................10

*Greko v. Diesel U.S.A., Inc.*,
No. 10-cv-02576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................................................14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ......................................................................................10, 12, 13

*Hughes v. Microsoft Corp.*,
No. C98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001)...................................13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...........................................................................................................12

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..............................................................................................................12

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .........................................................................................................13

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987) ...................................................................................................11

*Mandujano v. Basic Vegetable Prods., Inc.*,
541 F.2d 832 (9th Cir. 1976) ...........................................................................................................11

*Marquez v. Centerplate, Inc., et al.*,
U.S.D.C., N.D. Cal., No. 3:19-cv-00051-LHK ..................................................................................4

*Mora v. Harley-Davidson Credit Corp.*,
No. 1:08-CV-01453-BAM, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014)..............................................14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)............................................................................................................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .....................................................................................................11

LEGAL_US_W # 100612458.4

## TABLE OF AUTHORITIES
(*cont'd*)

*Page*

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................10, 13

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..................................................................................................11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)....................................................................................................9

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................................................12

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................2, 10

*Thieriot v. Celtic Ins. Co.*,
    No. C 10-04462 LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) .......................14

*Tijero v. Aaron Bros., Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013)..............................................................................12

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ......................................................................................10

**Statutes and Rules**

California Labor Code Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq*. .........................4, 7

Class Action Fairness Act, 28 U.S.C. § 1715 ...................................................................9, 10

Fed. R. Civ. P.
    R. 23.....................................................................................................................2, 10
    R. 23(e) .....................................................................................................................10
    R. 23(e)(2)...................................................................................................................2

**Other Authorities**

*Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42 ...........................13

LEGAL_US_W # 100612458.4

**NOTICE OF JOINT MOTION AND JOINT MOTION**

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on Thursday, November 21, 2019 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of this Court, located at 280 South First Street, 4th Floor, San Jose, CA 95113, before the Honorable Lucy H. Koh, plaintiffs Monique Raquedan and Ronald Martinez and defendant Centerplate of Delaware, Inc., hereby jointly do and will move the Court to grant, pursuant to Rule 23, Federal Rules of Civil Procedure, final approval of the Parties' Third Amended Settlement Agreement (the "Settlement") (ECF 159, ¶ 1, Exh. 1), and entry of judgment in accordance with the Settlement.

The Parties make this motion on the grounds that the Settlement, which was reached after arm's-length negotiations by counsel for Plaintiffs and the Class, and counsel for Centerplate, is fair and reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a single objection to the Settlement was made), and should be given final approval by the Court for all the reasons set forth in the memorandum in support of the motion.

The motion is based on this notice of motion and motion; the following memorandum in support of the motion; the accompanying declarations of Mary Butler, Shaun Setareh, and Jeffrey D. Wohl in support of this motion; the proposed form of Order Granting Final Approval of Class Action Settlement and Entering Final Judgment; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

**MEMORANDUM IN SUPPORT OF JOINT MOTION**

**I.      INTRODUCTION/SUMMARY OF ARGUMENT**

The Parties' settlement of this wage-and-hour class action (the "Settlement") meets the criteria for final approval. The Settlement fairly resolves Plaintiffs' claims that Centerplate violated California wage-and-hour laws by failing to pay them (and the settlement class) for off-the-clock work; provide them with compliant meal and rest periods; reimburse them for required expenses; pay them for vacation and sick pay; provide them with compliant wage statements; and pay their final wages on time. The Settlement is the product of arm's-length negotiations by experienced counsel after significant discovery, and recognition of the strengths and weaknesses of each side's positions. The Settlement has

LEGAL_US_W # 100612458.4

received the overwhelming support of the Class, with not a single objection to the Settlement made.

The Settlement, in the amount of $5,450,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex wage-and-hour class and collective actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement. (Setareh Decl., ¶¶ 9, 14.)

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement. (Setareh Decl., ¶ 26.) The Settlement Administrator received only 55 complete and timely opt-out requests out of the 10,193 Class Members who received notice of the Settlement (Butler Decl., ¶ 13), resulting in an opt-out rate of approximately 0.53%. An additional 16 opt-outs received were either missing required information or accompanied by a dispute of the information used to calculate settlement shares (which places those class members' intention in doubt). (*Id.*) The Settlement Administrator is in the process of resolving these matters. (*Id.*) However, even if all 71 were counted, the opt-out rate would be less than 0.7%.

Thus, the Parties respectfully submit that final approval of the Settlement should be granted and judgment entered accordingly.

## II.    BACKGROUND

At the times relevant to the action, Centerplate provided concession services at sports stadiums and other venues at 11 locations across California, including AT&T Park in San Francisco, Levi's Stadium in Santa Clara and Qualcomm Stadium in San Diego. During the applicable limitations period here, Centerplate estimates that it employed approximately 10,193 non-exempt employees.[1]

---

[1]    At the time the parties filed their Joint Motion for Preliminary Approval of Settlement (ECF 126), Centerplate believed that the Class Member estimate was 11,741. However, following the Court's order approving the Settlement, Centerplate finalized its class data, and the total number of Class

Plaintiffs, former kitchen workers at Levi's Stadium, have pursued this wage-and-hour class action on behalf of all non-exempt employees working for Centerplate at its venues in California during the applicable limitations period. Their allegations primarily concerned security procedures in place at the venues where Centerplate operates. Plaintiffs alleged that, due to those security procedures, they were not paid for off-the-clock work spent traveling to, and going through, security, and that they did not receive compliant meal and rest periods. Plaintiffs also complained that they were not paid their vacation and sick pay, were not reimbursed for required expenses, were not provided with compliant wage statements, and were not paid their final wages on time.

Centerplate denied (and continues to deny) plaintiffs' allegations. Among other things, Centerplate contends that time spent going through security at the venues cannot be charged to Centerplate, since the security is imposed and controlled by the venue operators, not Centerplate; that in any event the time spent going through security was *de minimis* and not compensable; that plaintiffs and the Class Members were provided with compliant meal and rest periods; that they were paid their vacation and sick pay; that they either did not incur any required expenses or were reimbursed for them; that they were provided with compliant wage statements; and that they were paid their final pay. They further deny that, for any purpose other than settling the action, plaintiffs' claims are not appropriate for class treatment.

In the course of the litigation, the parties took multiple depositions and produced documents to each other, including Centerplate's timekeeping and payroll data, and relevant written policies including employee manuals and collective bargaining agreements.

As described in the Parties' Joint Motion for Preliminary Approval of Settlement (ECF 126), the Settlement was only reached after a lengthy negotiation process. Pursuant to the order of the Court (ECF 83), the parties participated in a mediation with Tony Piazza, a nationally recognized mediator, on December 4, 2018. (ECF 126-1, ¶ 12.) Despite a full day of mediation, at which the parties engaged in good-faith, arm's-length bargaining, and realistically assessed the strengths and weakness of their positions, the case initially did not settle. Mediator Piazza persisted, however, and after further

Members was 10,193. (Declaration of Jeffrey D. Wohl in Support of Joint Motion for Final Approval of Proposed Class Action Settlement ("Wohl Decl."), ¶¶ 3, 4.)

3              NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-03828-LHK

LEGAL_US_W # 100612458.4

discussions with both sides he eventually made a mediator's proposal, which the parties accepted. (*Id.*, ¶ 13.)[2]

All Parties tentatively accepted the mediator's proposal. The Parties then worked to finalize the details of a settlement, which were contained in a settlement agreement fully executed on June 19, 2018. (ECF 126-1, ¶ 16, Exh. 1.) Among other things, the settlement provided for a Maximum Settlement Amount of $5,450,000; a Class Representative Service Payment of $5,000 for each Plaintiff; a Class Counsel's Fees and Expenses Payment of up to $ 1,851,667.00; and an expected per-Class Member Settlement Share of $ 291.78. (ECF 126.)

The parties' settlement included resolution of Plaintiffs' claim under the California Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, and allocated funds for the PAGA claim. As part of the settlement, the Parties filed a stipulation for leave so that Plaintiffs could file their Third Amended Complaint, adding the claim for relief under PAGA pursuant to the parties' stipulation. (ECF 147.) The Court granted the Parties' stipulation on April 12, 2019. (ECF 148.)

On March 21, 2019, proposed intervenor Renee Marquez ("Marquez") filed an untimely reply in support of her motion to intervene (ECF 140), which followed her original motion to intervene (ECF 106) and Centerplate's opposition to that motion (ECF 121.) On March 26, 2019, the parties objected to Marquez's reply as untimely and asked the Court to strike it. (ECF 141.) On March 27, 2019, the Court vacated its April 4, 2019, hearing on Marquez's motion to intervene and informed the parties that the Court would resolve Marquez's motion on the parties' papers. (ECF 142.) On March 28, 2019, Marquez withdrew her motion to intervene. (ECF 143.) On April 3, 2019, the Court entered an order, providing that Marquez's motion to intervene was "plainly unmeritorious" and that it would not "permit Marquez and her counsel to insert themselves in this case through such an unmeritorious motion." (ECF 146.)[3]

---

[2] As part of the same process the parties also settled a separate class action raising FCRA and analogous state-law claims. In addition, Rodrigo Raquedan, who initiated this action but later was replaced as a class representative by plaintiffs (ECF 103), has settled his wrongful termination action against Centerplate, thus bringing complete closure to all disputes between the parties.

[3] As they previously informed the Court, the parties reached a settlement of Marquez's claims and the separate *Marquez* action, *Marquez v. Centerplate, Inc., et al.*, U.S.D.C., N.D. Cal., No. 3:19-cv-00051-LHK, will be dismissed after final approval of the Settlement here is granted.

LEGAL_US_W # 100612458.4

During the June 13, 2019 hearing on the parties' joint motion for preliminary approval of class action settlement (ECF 153), the Court asked the parties to consider certain changes to the parties' Settlement Agreement and Class Notice. The parties did so. (ECF 153-1, 153-2.) On June 21, 2019, the Court asked the parties to consider further changes to the Amended Settlement Agreement and Class Notice. (ECF 155.) The parties did so. (ECF 156-1, 156-2.) On June 27, 2019, the Court asked the parties to consider further changes to the Second Amended Settlement and Second Amended Class Notice. (ECF 158.) The parties did so, filing a Third Amended Settlement and Third Amended Notice on July 1, 2019. (ECF 159-1, 159-2.) On July 3, 2019, the Court granted preliminary approval of the Third Amended Settlement Agreement. (ECF 162.)

In its order, the Court found that the Settlement "falls within the range of possible approval as fair, adequate and reasonable," as it "appears to be the product of arm's-length and informed negotiations" between the Parties, and appears "to treat all Class Members fairly." (ECF, ¶ 2.)

III.   THE SETTLEMENT

The following is a summary of the material elements of the Settlement.

A.   The Settlement Class.

Pursuant to the Settlement terms and the Court's order granting preliminary approval, the following Class was certified:

> All non-exempt employees of Centerplate who worked for Centerplate in the State of California at any time from May 24, 2013, to the earlier of (i) the date that the District Court grants preliminary approval of the Settlement, or (ii) March 31, 2019, excluding those individuals who already have resolved all the claims asserted in the Action, whether by settlement or adjudication.

(ECF 159-1, ¶ 1, Exh. 1.) There are a total of 10,193 Class Members. (Wohl Decl., ¶ 3.)

B.   Notice Process

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement. (ECF 162.) The Parties implemented the Court's directions in this regard.

After obtaining quotes from a number of claims administrators (ECF 126-1, ¶ 40), the Parties selected, and the Court approved, Simpluris, Inc. ("Simpluris"), to administer the Settlement. (ECF 162, ¶ 7.) Mary Butler with Simpluris was designated as project manager for the administration of the Settlement. (Butler Decl., ¶ 1.)

LEGAL_US_W # 100612458.4

On or about July 22, 2019, counsel for Centerplate provided Simpluris with text for the Class Notice and the Notice of Proposed Class Action Settlement and Final Approval Hearing. (Butler Decl., ¶ 5.) A draft of the formatted documents, in English and Spanish, was prepared by Simpluris and approved by the Parties. (*Id.*, ¶ 6.)

The mailing addresses contained in the Class Members' Data were processed and updated by Simpluris using the NOCA. (Butler Decl., ¶ 7.) In the event that any individual had filed a U.S. Postal Service change of address request, Simpluris used the address listed with the NCOA when mailing Class Notices. (*Id.*)

On August 16, 2019, Simpluris mailed Class Notices to all Class Members via first-class mail. (Butler Decl., ¶ 8.) The Class Notices informed Class Members that they could submit an election not to participate in the Settlement or objection to the Settlement postmarked by September 30, 2019. (*Id.*) However, on August 28, 2019, Simpluris notified the parties' counsel of inadvertent but material errors it made in the Information Sheet that was mailed to class members on August 16, 2019 as part of the Class Notice Packet. Unfortunately, Simpluris wrongly stated the class member's gross wages and estimated settlement share on the Information Sheet, and it corrected the errors. (*Id.*, ¶ 9.) The parties agreed that, in addition to correct the errors, it was prudent to extend the response deadline for opting out of the settlement, correcting their settlement information or objecting to the settlement to 30 days after the corrected Information Sheet was mailed, and to give those class members who previously opted out of the settlement or objected to it the opportunity to withdraw their opt-out or objection if they wished by the same deadline. (ECF 166.) The Court approved the new deadlines, including re-setting the hearing on the motion for final approval to November 21, 2019, on September 3, 2019. (*Id.*)

Of the 10,193 Class Notices mailed, 1,224 were returned on or before October 7 , 2019, as undeliverable. (Butler Decl., ¶ 12.) Simpluris performed address traces for each of these 1,224 Class Members using Accurint. (*Id.*) The address trace uses the Class Member's name, last-known address and Social Security number to locate a current address. (*Id.*) Of the 1,224 traces performed, Simpluris located updated addresses for 1,107 Class Members and promptly re-mailed Class Notices to those Class Members via first-class mail. (*Id.*) Simpluris did not locate updated addresses for the other 167 Class Members. (*Id.*) Of the 1,107 re-mailed Class Notice Packets, one Class Notice were returned to

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-03828-LHK

LEGAL_US_W # 100612458.4

Simpluris as undeliverable a second time. (*Id.*) Thus, 168 Class Notices (approximately 1.6% of the total) were undeliverable. (*Id.*)

Simpluris received 71 elections not to participate in the Settlement. (Butler Decl., ¶ 13.) Of those, 55 were complete. (*Id.*) An additional 16 opt-outs received were either missing required information or accompanied by a dispute of the information used to calculate settlement shares (which places those class members' intention in doubt). (*Id.*) Simpluris is in the process of resolving these matters. (*Id.*)

Simpluris was contacted by 33 class members who disputed information provided in their Class Member Settlement Information forms, including gross waged earned, location where the individual worked, and date(s) of employment. (Butler Decl., ¶ 14.) Thirty-three submitted evidence to support their claim. (*Id.*) The information received from these individuals was forwarded to Centerplate for research to determine whether their disputed information was accurate. (*Id.*) This information will be resolved and presented before the Court in the Post-Distribution Accounting, consistent with the Court's Procedural Guidance for Class Action Settlements.

Simpluris was also contacted by one individual who requested inclusion in the class. Centerplate investigated the matter, and determined that the individual was correctly excluded from the class. (Butler Decl., ¶ 15.)

Simpluris did not receive any objections to the Settlement. (Butler Decl., ¶ 16.)

### C.    Maximum Settlement Amount and Distributions.

The Settlement creates a Maximum Settlement Amount ("MSA") of $5,450,000.00. (ECF 159-1, ¶ 1, Exh. 1, § III.A.) The MSA covers (1) class representative payments of $5,000 to each plaintiff ($10,000 total) in compensation for having prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been successfully concluded; (2) Settlement Shares paid to Class Members; (3) the employer's share of taxes attributable to the Class Members' Settlement Shares; (4) the payment of $112,500 to the California Labor and Workforce Development Agency (the "LWDA") as its share (75%) of the $150,000 allocated to civil penalties under PAGA; (5) the Class Counsel Fees and Expenses Payment of not more than $1,816,667 (33% of the MSA), plus costs not to exceed $35,000, to compensate plaintiffs' counsel for all work performed thus far and all work

remaining to be performed in documenting and administrating the Settlement and securing Court approval; (6) Simpluris's fees and expenses, not to exceed $50,000; and (7) any other fees or expenses (other than the Class Counsel Fees and Expenses Payment) incurred in implementing the terms and conditions of the settlement agreement and securing the judgment pursuant to that agreement. (*Id.*, § III.A.)    After all court-approved deductions from the MSA, the Net Settlement Amount of $3,425,833.00 is available to pay the Class Members' Settlement Shares before taxes.

The Parties agreed that Settlement Shares would be calculated based on the Net Settlement Amount times the ratio of the gross wages earned by the Class Member from Centerplate in the State of California during the Class Period to the total amount of gross wages earned by all Class Members from Centerplate in the State of California during the Class Period (excluding wages that are subject of a prior class settlement[4]), subject to enhancement as follows:  If a Class Member worked at AT&T Park, Levi's Stadium or Qualcomm Stadium during the Class Period, then for purposes of calculating every Class Member's Settlement Share, that Class Member's gross-wages credit will be increased by twenty-five percent.  If a Class Member's employment with Centerplate terminated on or after May 24, 2014, then for purposes of calculating every Class Member's Settlement Share, that Class Member's gross-wages credit will be increased by ten percent.  (ECF 159-1, § III.B.1.)    The average Settlement Share is estimated to be $291.78 before taxes.  (*Id.*, ¶ 1, Exh. 1.)

The entire MSA will be paid out; none of it will revert to Centerplate.  Settlement checks that are uncashed after 180 days and additional notice to the Class Members will be paid to California Division of Labor Standards Enforcement's Unpaid Wages Fund in the name of the Class Member.  (ECF 159-1, ¶ 1, Exh. 1, § III.E.11.)

**D.    Scope of the Class Member Releases.**

In exchange for the Maximum Settlement Amount, Class Members will release all claims against Centerplate and its related persons and entities that were raised or could have been raised in the action, based on the factual allegations made in the action or otherwise based on or related to the allegations that Centerplate failed to pay for off-the-clock work, vacation, and sick pay; reimburse business

---

[4]    *Gabriel Thompson v. Centerplate of Delaware, Inc.*, U.S.D.C., N.D. Cal., No. 5:16-cv-01486-EJD.

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-03828-LHK

LEGAL_US_W # 100612458.4

expenses; pay final wages timely; and to provide compliant wage statements, as well as lawful meal and rest periods.  (ECF 159-1, § III.F.2.)

## IV.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

### A.    The Best Practical Notice of Settlement Has Been Provided to the Class.

The mailing of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as is necessary to protect the due process rights of Class Members.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of litigation and explanation of opt-out rights satisfies due process).  Indeed, individual Class Notice was served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; Class Members also were directed to a dedicated website that included the Notice of Proposed Class Action Settlement and Final Approval Hearing and other Settlement-related information.  Moreover, both the Class Notice and Notice of Proposed Class Action Settlement and Final Approval Hearing informed Class Members of the pendency of the action and their right not to participate in the Settlement.  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").  Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

This lack of governmental objection to the Settlement further supports final approval.

### B.    The CAFA Notice Requirements Have Been Satisfied.

Although there is no governmental participant in this case, pursuant to 28 U.S.C. section 1715 (the Class Action Fairness Act ("CAFA")), Centerplate provided notice of the Settlement to the Office of the Attorney General for the United States and the Office of the Attorney General for the States of Arizona, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Missouri, North Carolina, New Jersey, New Mexico, Nevada, New York, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas,

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-03828-LHK

LEGAL_US_W # 100612458.4

Virgin Islands, Washington, West Virginia, Wisconsin, and Wyoming. (ECF 132, ¶¶ 7-9, Exhs. A-C.) "[A]lthough CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010). To date, no federal or state official has raised such concerns. (Wohl Decl., ¶ 2)

### C.   Final Approval Standards under Rule 23.

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v.*

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-03828-LHK

*Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).   "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

**D.       The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations.**

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement; (2) the meaningful discovery conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the arm's-length negotiations that took place before an experienced mediator.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair.").  These factors are well satisfied here.

**1.       Class Members' Response to the Settlement Is Positive.**

Out of 10,193 Class Members, not a single Class Member objected to the Settlement.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, no more than 71 Class Members—less than 0.7% of the total Class—opted out of the Settlement.

This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where

11

LEGAL_US_W # 100612458.4

exclusions and opt-outs are low, there is presumption of favorable class reaction).

**2.      The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.**

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted). Before any mediation, Class Counsel reviewed hundreds of pages of documents, as well as payroll and timekeeping data, produced by Centerplate. (Setareh Decl., ¶¶ 11, 12.)  Centerplate took the depositions of Plaintiffs and Plaintiffs took the depositions of corporate witnesses. (*Id.*, ¶ 13.)  The Parties also spent significant time preparing for, and taking part, in mediation.

**3.      Counsel's Endorsement of the Settlement Is Entitled to Great Weight.**

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18.  Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiffs' Counsel and Centerplate's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. (Setareh Decl., ¶¶ 3, 9; Wohl Decl., ¶ 6.)  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

**4.      The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations.**

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties

12

LEGAL_US_W # 100612458.4

participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a full-day mediation. (Setareh Decl., ¶¶ 17, 18.) Before the mediation, the Parties submitted mediation briefing, including detailed data analyses and assessments, and substantial evidence. (*Id.*, ¶¶ 15, 16.)

### 5. The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.

#### a. The Value of the Settlement Favors Final Approval.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a […] speculative measure of what *might* have been achieved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$5,450,000—is a fair and reasonable result, especially in light of the defenses raised by Centerplate, including its defenses that any security checks are controlled by and mandated by the venues where Class Members work, not by Centerplate, and that Centerplate did not exercise control so as to make the time legally compensable under California law. Centerplate also

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-03828-LHK

LEGAL_US_W # 100612458.4

asserts that its meal-and-rest-period policies were legally compliant and that it provided breaks in accordance with California law. Centerplate also presented an expert report that purported to show the time spent going through security checks was minimal, and that Centerplate's compliance with meal-period requirements was high, including substantial payments of meal-period premiums. (Setareh Decl., ¶ 22.)

Moreover, the Settlement Share amount represents a reasonable, meaningful recovery for Class Members. (ECF 126-1, ¶ 37.)

Accordingly, the $5,450,000 Maximum Settlement Amount is well within the range of reasonableness.

### b. Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.

When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …").

Similarly here, Centerplate continues to contest liability and the propriety of class certification. Centerplate's denial of liability, paired with its diligent opposition to class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement. (Setareh Decl., ¶ 23.)

Moreover, this class action involves intricate legal and factual questions. Litigating these complex claims would require substantial additional discovery and pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. (Setareh Decl., ¶¶ 24, 25.) Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-03828-LHK

LEGAL_US_W # 100612458.4

and factual issues. (*Id.*) Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials. (*Id.*) As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay. (*Id.*) In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a result benefits the Parties and the court system.

## V.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant final approval of the Settlement.

Dated:  October 17, 2019.

SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
SETAREH LAW GROUP


By: _____ /s/ *Shaun Setareh* _____
Attorneys for Plaintiffs Rodrigo Raquedan,
Monique Raquedan and
Ronald Martinez

Dated:  October 17, 2019.

JEFFREY D. WOHL
ZINA DELDAR
JANA B. FITZGERALD
PAUL HASTINGS LLP


By: _____ /s/ *Jeffrey D. Wohl* _____
Attorneys for Defendant
Centerplate of Delaware, Inc.

NTC OF JT MTN, JT MTN FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEMO ISO
U.S.D.C., N.D. Cal., No. 5:17-cv-03828-LHK

LEGAL_US_W # 100612458.4